NORTHAMPTON CORPORATION *v.*
PRINCE GEORGE'S COUNTY,
MARYLAND ET AL.

[No. 851, September Term, 1973.]

*Decided June 17, 1974.*

626

The cause was argued before Thompson, Gilbert and Moore, JJ.

*Russell W. Shipley*, with whom were *William E. Knight* and *Kahler, DeBlasis, Shipley & O'Malley* on the brief, for appellant.

*Ellis J. Koch, Associate County Attorney for Prince George's County*, with whom was *Joseph S. Casula, County Attorney*, on the brief, for appellees.

GILBERT, J., delivered the opinion of the Court.

Northampton Corporation, appellant, is indignant over denial by the District Council of Prince George's County of two applications for rezoning filed by appellant. In this Court appellant urges us to reverse a judgment of the Circuit Court for Prince George's County affirming the action of the District Council and to remand the proceeding "for passage of an appropriate rezoning resolution." We decline to grant appellant the relief sought, but we vacate the judgment of the Circuit Court and remand the matter for proceedings under the applicable law.

On January 29, 1971 the appellant filed its application to rezone two areas, designated on the applications as ZAP 8563 and ZAP 8564, from R-R (rural residential) to I-1 (light industrial). The technical staff of the Maryland-National Capital Park and Planning Commission recommended that both properties be rezoned to I-1. The Planning Board of Prince George's County made a similar recommendation. The matter was heard before the county zoning hearing examiner.[1] The hearing was originally scheduled for July 7, 1972, and insofar as we can tell from the record, no protestants appeared at that time. The hearing, however, was postponed at the request of appellant until August 4, 1972. The record does reveal that there were no protestants physically present at the August hearing, but the examiner was in receipt of a letter from Mrs. Lem F. Woo, a resident of a nearby area. Mrs. Woo in her letter stated:

> "I am greatly opposed to any rezoning especially any types of trucks, parking, lumber or warehousing, mainly because there is an elementary school in that area.
>
> The idea of having trucks in this particular area would be a hazard to the children and to the school buses."

---

1. The position of county zoning hearing examiner was created by the Prince George's County Charter that was adopted by the voters at the General Election of November 3, 1970.

In his opinion, in which he recommended that the District Council grant the requested rezoning, the examiner referred to Mrs. Woo's letter. The examiner also stated in his opinion that the "school is not opposed to these applications." It would appear, however, that the School Board did not phrase their letter to the examiner in quite such unqualified words. The Board actually said:

"There is no objection to the rezoning of [these] parcel[s] of land to the I-1 category as long as the ultimate use of this land is not detrimental to the safety, educational and administrative function of Ritchie Elementary School."

As the result of the notification that the rezoning had been recommended by the hearing examiner, Mrs. Woo wrote to the Council and requested an opportunity to be heard on "oral argument". Mrs. Woo was in turn advised that "oral argument" was scheduled before the Council on December 13, 1972, but argument would be limited to the testimony "presented before the Zoning Hearing Examiner; no new testimony is allowed." The record before us does not contain the minutes of the District Council for December 13, 1972 although it is apparent from subsequent minutes [2] that Mrs. Woo did appear on the December date and expounded her views. While the record is silent as to the happenings before the Council in December, it is conceded in the briefs that the District Council failed to approve a motion to rezone, and the cases were rescheduled. The District Council again considered the matter on February 28, 1973, and once more a motion to approve failed.[3]

---

2. Minutes of the District Council meeting of February 28, 1973.

3. The record is confusing as to what transpired at that meeting. The minutes reflect the following:

"Kelly [Council Member]: I move for approval, as recommended by the Examiner.

Garrity [Chairman]: Second. Discussion. Those in favor say aye.

Three: No. Four: Aye. It fails.

Potts [Council Member]: This is the last day. Are we going to have it back for reconsideration?

Garrity: No. That's it.

The failure of the Council to approve the motion to rezone operated as a denial because February 28, 1973 was the last day the Council could act under the Charter.[4]

The appellant sought redress in the Circuit Court and argued that because the District Council had failed to make "findings of basic facts and written conclusions", it should be reversed.

The trial court relied upon the Prince George's County Code of Public Local Laws (1963), § 59-104 which states:

> "In Prince George's County, no application for a map amendment or special exception, *which is contested,* shall be granted or denied except upon written findings of basic facts and written conclusions." (Emphasis supplied).

The court then concluded that the instant case was not a contested case because Mrs. Woo did not attend the hearing before the zoning hearing examiner. Consequently, Mrs. Woo could not be cross-examined, and the denial of the right of cross-examination to the appellant constituted violation of procedural due process of law. The court then determined that § 59-104 was inapplicable. The judge went on to find that the District Council *could* have based its findings upon an aerial photograph depicting the close proximity of the elementary school to the subject property and *might* have determined that such property "*could* pose a threat to the health, safety and welfare of the children." The court further stated that there was a housing development nearby and that the Council *could* have taken this into consideration. The judge said:

> " . . . [T]hese 100 houses or so are clearly visible

---

Kelly: Mr. Chairman, I call for a roll call of the last vote.

Garrity: Roll call has been called. The chair votes 'Aye'.

The Vote: Aye: Garrity, Burcham, Kelly.

No: Bogley, Hart, Potts, Reeder."

4. The ninety day period is calculated from the date that the zoning hearing examiner files his decision with the Council. Charter, Art. VII, § 707 (f).

from the subject property and would have some environmental effect thereon."

He concluded that there was sufficient evidence before the District Council to support its actions and that the issue was "fairly debatable". *See Largo Civic Ass'n v. Prince George's County*, 21 Md. App. 76, 318 A. 2d 834 (1974).

We observe that at the General Election on November 3, 1970 the voters of Prince George's County approved a Charter form of government.[5] The Charter became effective "on the thirtieth day following its adoption, except as otherwise specifically provided in the Transitional Provisions (Article XII) of this Charter." Charter, Art. XI, § 1101. The transitional provisions further mandated that Article XI "shall become operative at the time the first County Executive and the majority of the members of the first Council take office." Art. XII, § 1207. A County Executive was elected on January 26, 1971 and he, along with a majority of the County Council, took office on February 8, 1971. The provisions of the Charter were operative, not only at the time this matter was heard before the District Council on "oral argument", but also when the hearing was held by the county zoning hearing examiner.

Article VII of the Charter entitled, "Planning and Zoning", at § 706 states:

"(a) Before any zoning map amendment or special exception to a zoning regulation may be granted, *there shall be a public hearing thereon before either the Council or a zoning hearing examiner,* appointed pursuant to the provisions of this Charter. Said hearing may be held only upon public notice of the time and place of the hearing given at least thirty calendar days immediately preceding the hearing." (Emphasis supplied).

Article VII, § 707 (a) provides:

"(a) The final decision of the Council in any zoning

5. The Charter form of County Government was adopted by a vote of 68,495 to 36,208.

case shall be based solely upon record evidence, and shall be supported by specific written findings of basic facts and conclusions of law."

Article VII, § 711 prescribes the duties of the zoning hearing examiner as follows:

"In all cases delegated by the Council to a zoning hearing examiner, he shall conduct a full and complete public hearing upon the application in question, subject to all the requirements and restrictions imposed by law upon the Council. He shall be empowered to swear witnesses and to request subpoenas from the Council. After the conclusion of the hearing, he shall prepare and serve upon all persons of record a written decision which shall contain specific findings of basic facts, conclusions of law, and a recommended disposition of the case. Within thirty calendar days after service of the said decision, any person of record may file exceptions to any portion of the decision and may request oral argument thereon before the Council. The Council shall grant such request and shall give at least ten calendar days notice of the time and place of the argument to all persons of record. In the event no exceptions or request for oral argument is filed within thirty calendar days from the service of said decision, the Council may act forthwith upon the application in accordance with Section 707 of this Charter. The Council shall in all cases, decide finally each application by record vote within 90 calendar days after the hearing examiner files his decision, in accordance with Section 707 of this Charter."

We think it clear that § 707 (a) requires the District Council to make written findings of facts and conclusions of law when it renders a "final decision". In those cases where the Council has delegated the duty of making findings of fact and recommendations, pursuant to § 711, to the zoning hearing examiner, the Council may comply with the

provisions of § 707 (a) by adopting the findings and conclusions of the zoning hearing examiner. Consequently, it is only in those cases where a "final decision" is made in which the Council does not adopt the findings and conclusions of the zoning hearing examiner that the Council's actions must be supported by its own "specific written findings of basic facts and conclusions of law." When, as here, the Council fails to act within the time prescribed in the Charter, and the application is thus denied, the trial court, on appeal, is free to make its own findings of fact and conclusions based upon the record submitted to it.

In the case now before us the trial judge should have considered the Charter provisions and not the Prince George's County Code of Public Local Laws (1963), § 59-104 because § 59-104 was implicitly repealed by the provisions of Charter, Art. XI, § 1102 which provides:

> "The Public Local Laws of Prince George's County and all rules, regulations, resolutions, and ordinances of the County Commissioners in force at the time of the effective date of this Charter are hereby repealed to the extent that they are inconsistent with the provisions of this Charter . . . ."

Inasmuch as Article VII of the Charter created an entirely different procedure relative to zoning applications than that existent under the Code of Public Local Laws, the inconsistent Public Local Laws are no longer of any force or effect. Even if § 59-104 were viable, the matter heard by the hearing examiner was not uncontested, and the trial judge was in error in so finding.

This Court recently, in *Largo Civic Ass'n v. Prince George's County, supra,* pointed out that *Bryniarski v. Montgomery County,* 247 Md. 137, 230 A. 2d 289 (1967) had set forth two prerequisites to an appeal from a zoning decision. The Court of Appeals in *Bryniarski,* said at 143:

> "Under the applicable statutory law, two conditions precedent must be met before a person

has standing to appeal to the Circuit Court . . . from a decision of the . . . [zoning body]: (1) he must have been *a party to the proceeding before the* [zoning body], and (2) he must be *aggrieved by the decision of the* [zoning body]."

We proceeded in *Largo* to state that there is nothing in *Bryniarski* that holds that a person must testify before the zoning body in order to be a "party to the proceeding", and that there is no such requirement "provided the record shows he was in fact a party. *DuBay v. Crane,* 240 Md. 180, 213 A. 2d 487 (1965). *See also Hertelendy v. Montgomery Cty.,* 245 Md. 554, 226 A. 2d 672 (1967)."

In *Hertelendy v. Montgomery Cty., supra,* the Court had before it a case wherein Hertelendy, in a letter, requested the Montgomery County Board of Zoning Appeals to deny a zoning appeal. The letter, in that case, was received into evidence. The Board voted to grant the requested variance, and Hertelendy appealed. The trial judge held that Hertelendy was not an aggrieved person within the meaning of the law, nor was he a party to the proceeding before the Board. In remanding without affirmance or reversal the Court said that it was "significant that copies of the majority and dissenting opinions of the Board were sent to . . . Hertelendy." In the instant case, while Mrs. Woo's letter to the hearing examiner was not formally admitted into evidence, it is manifest that the examiner considered Mrs. Woo a party to the proceeding because he referred to her letter in his opinion. The examiner said:

" . . . [T]he one opposition party offered a letter in opposition stating that she was opposed to any rezoning because of the types of trucks, parking, lumber, or warehousing that would be brought to the elementary school area."

Moreover, as in *Hertelendy,* Mrs. Woo received a copy of the examiner's decision and recommendation. She promptly noted her objection. Presumably, she appeared before the District Council on December 13, 1972 and was heard on

"oral argument". The Council obviously considered Mrs. Woo a party.

We know of no rule of law that mandates that a party in a zoning case must be present at the hearing before the examiner, zoning board or District Council and be subject to cross-examination in order to be an aggrieved party.[6] *Bryniarski* makes it crystal clear that there are only two prerequisites that must be met in order to confer upon a person "standing to appeal to the Circuit Court", and Mrs. Woo has, in our opinion, satisfied both of them.

Under the holding of *Hertelendy* Mrs. Woo would have had the right to appeal to the Circuit Court from an adverse decision of the District Council. This being true it follows that Mrs. Woo was a party to the proceeding before the zoning hearing examiner and had a right to appear before the Council on oral argument. It would be a strange rule, indeed, that would allow a person to appeal an adverse zoning ruling to the Circuit Court, but deny that person the right to appear before the District Council on the ground that the hearing before the zoning examiner was uncontested because the person did not physically present herself at the zoning hearing. In our view the case before the hearing examiner was contested, and we hold that the trial court erred in concluding that the inability of appellant to cross-examine Mrs. Woo denied appellant procedural due process.

As we stated at the outset, we vacate the judgment of the Circuit Court and remand the matter for further proceedings under the applicable provisions of the County Charter. It may well be that the trial court after reviewing the case, considering the appropriate law, and making its findings of facts and conclusions will reach the same result, but we express no opinion thereon.

In so holding we are not unmindful of the Court of

---

6. Charter, Art. VII, § 706 (c) provides:
   "All persons who appear to testify in any zoning case shall be sworn, and reasonable cross-examination of witnesses shall be permitted."

Appeals decision in *Pr. George's Co. v. Md.-Nat'l Cap.*, 269 Md. 202, 306 A. 2d 223 (1973), in which the Court in an extended discussion decided that certain portions of the Prince George's County Charter were invalid in their application to the Regional District (the district over which the Maryland National Capital Park and Planning Commission exercises zoning authority) because of their conflict with Laws of 1959, ch. 780. The Court noted that ch. 780 was not a Public Local Law but rather, because of its application to more than one county, a Public General Law. We observe that although § 59-104 of the Code of Public Local Laws of Prince George's County was placed within the ambit of ch. 780 by the enactment of Laws of 1965, ch. 898, the Legislature, nevertheless by Laws of 1966, ch. 426, manifested its intention that § 59-104, along with §§ 59-102, 59-103 and 59-105, are to be considered as Public Local Laws when it provided that the purpose of ch. 426 was *"to clarify and make clear that sections 59-102 through 59-105 . . . were to and shall apply only to Prince George's County . . . ."* (Emphasis supplied). Therefore, whatever the provenience of these sections, by virtue of Laws of 1966, ch. 426, they perspicuously became Public Local Laws of Prince George's County, and hence, because of their conflict with the Charter, were implicitly repealed when the County Charter became effective.

A final word is in order relative to the assessment of costs in this case. This Court and the Court of Appeals have repeatedly stated that the Maryland Rules of Practice and Procedure are "not guides or merely helpful hints to the practice of law. They are precise rubrics established to promote the orderly and efficient administration of justice, and they are to be read and followed." *Callahan v. Dean,* 17 Md. App. 67, 71, 299 A. 2d 479 (1973). *See also Isen v. Phoenix Assurance Co.,* 259 Md. 564, 270 A. 2d 476 (1970); *Brown v. Fraley,* 222 Md. 480, 161 A. 2d 128 (1960).

Maryland Rule 1026a provides:

> "Unless ordered by this Court, the record on appeal shall not be printed."

636

Maryland Rule 1031 prescribes the style, length and content for both the appellant's and the appellee's briefs. There is no provision in the Rules applicable to this Court for the printing or reproduction of a record extract. Notwithstanding the Rules, both the appellant and the appellee have printed or otherwise reproduced record extracts as part of their briefs. Because both the appellant and the appellee have violated the Rules, we deem it equitable to charge each party with its own costs.

> *Judgment vacated and case remanded for further proceedings.*
>
> *Each party to pay his own costs.*