RAYMOND SEDNEY ET AL. *v.* STANLEY E. LLOYD

[No. 361, September Term, 1979.]

*Decided February 7, 1980.*

The cause was argued before THOMPSON, MOORE and LISS, JJ.

*John A. Goodman* for appellants Sedney, Joesting and Marzicola. Submitted on brief by *Gregory A. Rapisarda, Assistant County Attorney for Harford County,* for appellant Harford County.

*Amicus curiae* brief filed by Town of Bel Air, *Charles B. Keenan, Jr., Stephen M. Goldberg* and *Cameron & Reed* on the brief.

*Edward C. Covahey, Jr.,* with whom were *Mark S. Devan* and *Covahey & Boozer* on the brief, for appellee.

MOORE, J., delivered the opinion of the Court.

After reviewing the record in an appeal from a decision of the County Council of Harford County denying a requested rezoning, the Circuit Court for Harford County (Land, J.) [1] reversed the council and ordered that the property be rezoned. In this appeal from that order we are asked by the protestants and by Harford County to reverse and order that

---

1. The Honorable Marvin J. Land, Associate Judge of the Circuit Court for Baltimore County, was assigned to hear the appeal after the members of the Circuit Court for Harford County recused themselves.

the decision of the council be affirmed. Chief among the issues in the case is the definition of the neighborhood in which changes permitting the rezoning have occurred and are to be evaluated. The question to be resolved on appeal is whether the Chief Zoning Hearing Examiner's delineation of the neighborhood was "unduly restrictive," and therefore, arbitrary and capricious as found by the circuit court; or whether it was "fairly debatable" as urged by the protestants and Harford County.

I

The subject property is a 3.13 acre parcel situated in Harford County but practically surrounded by the Town of Bel Air.[2] In fact, the parcel forms part of the tip of a thin peninsula of Harford County land which is abutted on three sides by Bel Air. Originally, Stanley Lloyd, the property owner, sought to have the property annexed by Bel Air and rezoned from an urban residential district to a commercial zoning category.[3] After he purchased the property, the Court of Appeals decided the case of *City of Gaithersburg v. Montgomery County,* 271 Md. 505, 318 A.2d 509 (1974) which foreclosed his plans for annexation followed by immediate rezoning.[4] On February 7, 1975, Mr. Lloyd filed, with Harford County, a petition for a rezoning of the parcel to B-3 (general business).

2. Of course, Bel Air is, itself, within Harford County. We merely distinguish between land lying solely in Harford County and land in the county but also within the confines of the incorporated town. On appeal to this Court, the Town of Bel Air is an *amicus curiae* joining in the opposition to the rezoning and urging reversal of the circuit court's judgment.

3. The property is currently zoned by Harford County as R-2 (urban residence). Mr. Lloyd initially sought annexation and rezoning to Bel Air classification B-3 (general business). When that strategy failed, he petitioned to have the property rezoned to Harford County B-3 (general business). During the hearings before the Chief Zoning Hearing Examiner, Mr. Lloyd orally amended his petition to B-2 (community business) in order to allay any fear that he would erect a body shop or gasoline service station, permitted uses under the B-3 zoning classification.

4. The *Gaithersburg* case upheld the constitutionality, under Maryland Constitution Art. XI-E, of 1971 Md. Laws, ch. 116, presently codified in Md. Code Ann., art. 23A § 9 (c) (1979 Cum. Supp.). Enacted as an emergency measure, the statute essentially prohibited municipalities from rezoning land within five years of annexation if the proposed use would be "substantially different" from the use specified prior to annexation. City of Gaithersburg v. Montgomery County, 271 Md. 505, 506, 318 A.2d 509, 509-10 (1974).

In June 1975, a Harford County Planning Department Staff Report recommended that the rezoning be denied. At that time the planning commission of the town recommended that the property be "commercially zoned." Hearings on the proposed rezoning before the Chief Zoning Hearing Examiner of Harford County (Mercedes C. Samborsky, Esq.) extended over the period of September, 1975 to March, 1976. Expert testimony relating to traffic, land planning, and need for additional commercial development was presented on behalf of Mr. Lloyd. Local residents appeared and testified in opposition. The examiner rendered her decision on December 7, 1976; she denied the petition on the ground that the "neighborhood" had not sufficiently changed since the comprehensive zoning of 1957. Mr. Lloyd took the case to the Harford County Council and the council, without elaboration, affirmed the examiner's decision on April 6, 1977.[5]

From that decision of the county council, Mr. Lloyd appealed to the Circuit Court for Harford County. The petitions to intervene of Harford County, Raymond Sedney, Elizabeth Joesting, and Martin A. Marzicola were granted, and those parties were made defendants in the case. After hearing oral argument, Judge Land reversed the council in a written opinion and ordered that the property be rezoned B-2. In this Court, the protestants and the county claim that Judge Land erred: by personally viewing the subject property; by rejecting the examiner's definition of neighborhood; by failing himself to delineate the neighborhood; by misinterpreting the Maryland "change-mistake" rule; and by failing to consider the public

---

5. Under the Harford County zoning law, the zoning hearing examiner renders not a recommendation but a decision which becomes final unless "final argument" before the county council is requested within 45 days of the examiner's decision. Harford County Zoning Ordinance, Ordinance No. 6, as amended. In a conditional use case, this procedure has recently been held by the Court of Appeals to be "ultra vires and in conflict with public general law" to the extent that it permitted an appeal to the circuit court directly from the examiner's decision. Klein v. Colonial Pipeline Co., 285 Md. 76, 83, 400 A.2d 768, 772 (1979). The Express Powers Act, Md. Ann. Code, art. 25A, § 5 (U) (1979 Cum. Supp.), allows an appeal only from a decision of the board of appeals. (Bill 73-5, effective May 17, 1973, constituted the County Council of Harford County as the Board of Appeals of Harford County.) See also Hope v. Baltimore County, 44 Md. App. 481, 409 A.2d 753 (1980).

interest. We are asked to reverse the circuit court and to reinstate the decision of the Harford County Council.

## II

Under Maryland law, a property owner who relies upon change, as distinguished from mistake, in seeking a zoning reclassification, must establish:

> "(a) what area reasonably constituted the 'neighborhood' of the subject property . . .
>
> (b) the changes which have occurred in that neighborhood since the comprehensive zoning and . . .
>
> (c) that these changes resulted in a change in the character of the neighborhood."

*Montgomery v. Board of County Commissioners for Prince George's County,* 256 Md. 597, 602, 261 A.2d 447, 450 (1970), *appeal after remand,* 263 Md. 1, 280 A.2d 901 (1971). In making its decision to grant or deny the rezoning request, the zoning body must address its findings and conclusions to the elements enumerated above. *Id.; see also Mayor of Rockville v. Stone,* 271 Md. 655, 661, 319 A.2d 536, 540 (1974).

Once a decision has been rendered by the zoning authority, it must be affirmed by a reviewing court if it is, in the language of the cases, "fairly debatable." [6] *Id.; Pattey v. Board of County Commissioners for Worcester County,* 271 Md. 352, 360, 317 A.2d 142, 146 (1974). When a court reviews the administrative record in assessing the propriety of the zoning authority's decision, it may not, of course, substitute its judgment for that of the administrative body. *Montgomery County Council v. Pleasants,* 266 Md. 462, 465, 295 A.2d 216, 217 (1972).

---

6. The "fairly debatable" test is analogous to the "clearly erroneous" standard commonly applied under Md. Rules 886 and 1086. A court must consider all of the evidence before the zoning authority; the decision is "fairly debatable" if it is supported by substantial evidence on the record taken as a whole. Bd. of County Comm'rs of Prince George's County v. Oak Hill Farms, Inc., 232 Md. 274, 283, 192 A.2d 761, 766 (1963); *see also* Mayor of Annapolis v. Annapolis Waterfront Co., 284 Md. 383, 394-98, 396 A.2d 1080, 1088-89 (1979).

At the circuit court level, Mr. Lloyd chiefly complained of the zoning hearing examiner's definition of neighborhood. He contended that her delineation of the neighborhood, as routinely confirmed by the county council, was arbitrary and capricious because it included only the 3.13 acre parcel.[7] During the hearings before the examiner, Mr. Frank A. Inabinet, a land use planning consultant, testified as an expert witness for the petitioner and described the neighborhood of the property. His definition of the neighborhood extended from Main Street in Bel Air to Winters Run and from the Bel Air By-pass to an imaginary line 2600-3000 feet south of Baltimore Pike but running parallel thereto. These boundaries were between one-half and one mile distant from the subject property. No other witness, either on behalf of Mr. Lloyd or the protestants, testified as to the extent of the neighborhood to be considered in evaluating the petition.

In her decision the hearing examiner rejected Mr. Inabinet's definition and substituted her own:

> "It is the Examiner's opinion that the neighborhood designated by Mr. Inabinet far exceeds the bounds of the 'immediate environs of the subject property' .... A more appropriate neighborhood for the subject property is that area bounded by the proposed relocation for MD Route 24 between the subject property and the Harford Mall, the Glen Deaton property, the residential area of West Bel Air as it abuts the subject property on the remaining two sides."

7. As pointed out above, the 3.13 acre parcel is situated in Harford County, but is practically surrounded on three sides by Bel Air. The property fronts on Boulton Street which separates the parcel from Harford County parkland. To the northeast is a small group of apartments beyond which lies the residential community of West Bel Air, the area in which the protestants reside. To the southeast is a property (the Glen Deaton property) currently used to graze cattle, but zoned B-3 and R-2, the latter classification apparently being a mistake in the comprehensive zoning map. This grazing land fronts on Baltimore Pike, a highway with extensive commercial development. Directly to the southwest and abutting the subject property is the Harford Mall, zoned M-1, an industrial classification, and consisting of approximately 30 acres. Beyond the adjacent properties lie various pockets of R-1, R-2 and B-3 zoning classifications. West Bel Air and the Harford Mall are within the corporate limits of the town. The Glen Deaton property is not in the town, but abuts town property on two sides.

In addition, the examiner found that "[t]he Harford Mall is a commercial neighborhood unto itself and has little effect on the use of the residential area adjacent to the subject property."

In Maryland it is now axiomatic that the area constituting the neighborhood of a subject property for the purpose of evaluating change will depend upon the facts and circumstances of each case. *See, e.g., Clayman v. Prince George's County,* 266 Md. 409, 418, 292 A.2d 689, 694 (1972). The neighborhood must be limited to the "immediate environs of the subject property" and cannot extend for miles in all directions. *Pattey v. Board of County Commissioners of Worcester County, supra,* 271 Md. at 363, 317 A.2d at 148. That being said, however, we deem it inescapable that the hearing examiner's delineation of the neighborhood in this case was unjustifiably restrictive and not based on any evidence in the administrative record. The circuit court was correct in finding her decision to be arbitrary and capricious.

One possible interpretation of the examiner's opinion is, as found by the circuit court, that the neighborhood "is in fact the lot in question." Of course, such a definition would not comport with law or reality. The concept of "immediate environs of the subject property" implies an area larger than the property itself.

Even the most liberal reading of the examiner's opinion leads to the conclusion that she was "unduly restrictive." The most expansive interpretation of her delineation of the neighborhood would include the residential community of West Bel Air while excluding the Harford Mall abutting the property to the south and the extensive commercial development along Baltimore Pike, only blocks away.

We think that the examiner's definition is defective for two reasons. First, there was no testimony in the administrative record to support her delineation; the only evidence defining the neighborhood was the testimony of Mr. Inabinet, the petitioner's expert. This evidentiary void renders the examiner's decision arbitrary and capricious. There is no evidence in the record of any "honest dispute" over the delineation of the neighborhood which would render the

640

examiner's decision "fairly debatable." *Cf. Rockville v. Stone, supra,* 271 Md. at 661, 319 A.2d at 540.

Second, the examiner's decision to exclude commercial property abutting the subject parcel in defining the neighborhood of the parcel is similarly arbitrary and capricious. The Harford Mall is a reality which cannot be overlooked in placing the subject parcel in its proper perspective. Normally, the greatest deference must be allowed the zoning authority's judgment regarding the scope of the neighborhood to be drawn; however, the legal requirement remains that the neighborhood delineated by the authority must be "reasonable." *Pattey v. Board of County Commissioners for Worcester County, supra,* 271 Md. at 363, 317 A.2d at 148. We agree with the circuit court that "[t]o ignore the existence of the Harford Mall and its effect upon the subject property is difficult, if not impossible." The examiner's delineation of the neighborhood, interpreted with every conceivable and favorable inference, unreasonably excluded all commercial property well within the "immediate environs of the subject property." Her decision, as confirmed by the county council, was unsupported by any evidence in the administrative record and was, therefore, arbitrary and capricious. *See Woodlawn Area Citizens Ass'n v. Board of County Commissioners for Prince George's County,* 241 Md. 187, 192, 216 A.2d 149, 153 (1966) (decision must be supported by "competent, material, and substantial evidence.").

Because this initial misstep in defining "neighborhood" tainted the final decision to deny the rezoning, the zoning authority's action was properly reversed by the circuit court. The error in delineating the neighborhood clearly was material and central to the examiner's adverse decision.

At the same time, however, we do believe that the circuit court overstepped its authority by ordering the property rezoned. While the error in delineating the neighborhood requires that the zoning authority's decision be vacated, the error does not concomitantly mandate rezoning. The decision to rezone is primarily left to the appropriate zoning authority with judicial oversight to insure that the authority adheres to procedural and substantive guidelines. Since a

requisite antecedent to the evaluation of change in a rezoning case is a properly and legally delineated neighborhood, neither the examiner nor the county council actually considered the changes relevant to this case. It follows, then, that the zoning authority, having erred in its initial attempt to evaluate Mr. Lloyd's petition for rezoning, must be afforded another opportunity to consider the changes that have occurred in a correctly defined neighborhood.

A reviewing court, charged with the passive duty of protecting parties from illegal action, may not make an essentially legislative decision in a rezoning case.[8] The circuit court, while correctly rejecting the examiner's definition of the neighborhood, erred in finding changes sufficient to justify a reclassification, without reference to a properly defined neighborhood. A remand to the zoning authority for new and corrected findings and conclusions was, and is, necessitated.[9] *See Montgomery v. Board of County*

---

8. The impropriety of a court-ordered rezoning at this stage of the proceedings is made apparent by reference to an oft-quoted principle laid down by the Court of Appeals:

> "Even if an applicant meets his burden of proving . . . that changes have occurred in the neighborhood causing a change in the character of the neighborhood, this merely *permits* the legislative body to grant the requested rezoning but does not *require* it to do so."
> (Emphasis in the original.)

Messenger v. Bd. of County Comm'rs for Prince George's County, 259 Md. 693, 704, 271 A.2d 166, 172 (1970). Of course, if a party is able to show a constitutional infirmity in the zoning authority's denial of a requested rezoning, such as an inability to make any reasonable use of a property as presently zoned, then the denial is reversible on appeal to a reviewing court despite the apparently deferential standard of *Messenger. Id.* at 706, 271 A.2d at 173; Templeton v. County Council of Prince George's County, 21 Md. App. 636, 646, 321 A.2d 778, 782, *aff'd on remand,* 23 Md. App. 596, 329 A.2d 428 (1974). *See also* Montgomery County v. Nat. Capital Realty Corp., 267 Md. 364, 376, 297 A.2d 675, 682 (1972); Wright v. McCubbin, 260 Md. 11, 13, 271 A.2d 365, 366 (1970). *Cf.* Bd. of County Comm'rs of Prince George's County v. Oak Hill Farms, Inc., 232 Md. 274, 284, 192 A.2d 761, 766-67 (1963) (court ordered rezoning where denial had been totally unsupported by evidence in record and hence was arbitrary and capricious). Similarly, if a party is able to establish that the denial of a requested rezoning is a product of a purposeful and unlawful discrimination, then the denial is subject to reversal under the arbitrary and capricious standard. County Council for Montgomery County v. Gendleman, 227 Md. 491, 498, 177 A.2d 687, 690-91 (1962). Mr. Lloyd in this appeal does not claim any constitutional infirmity which would permit a reviewing court to avoid the usual rule of deference and to order a rezoning at this stage in the proceedings.

9. Much of the economic and demographic testimony received in evidence at the hearings in 1975 and 1976 related to prognostications for 1980. The record will, of course, require updating on remand.

*Commissioners for Prince George's County, supra,* 256 Md. at 604, 261 A.2d at 451 (absence of statutorily mandated findings and conclusions requires remand to zoning authority for properly drawn findings and conclusions). We shall, therefore, vacate the judgment of the Circuit Court for Harford County and remand the case to that court with directions to remand to the Harford County Council for further proceedings consistent with this opinion.

In view of our disposition of the case, it is unnecessary to discuss the other issues raised by the protestants and the county in their brief.[10]

> *Order of the Circuit Court for Harford County vacated; case remanded to that court with instructions to remand to the County Council of Harford County for further proceedings in accordance with this opinion; one-half of the costs to be paid by the appellants and one-half of the costs to be paid by the appellee.*

---

**10.** Even if we were to consider the appellants' complaint that Judge Land improperly received evidence in the case when he viewed the subject property, we would be compelled to hold that the appellants are estopped from raising the issue. It was at their behest and with their encouragement that the judge undertook to view the property. Surely on appeal they cannot reasonably challenge a procedure which they themselves initiated below.